IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARK E. WENNINGHOFF,

        Plaintiff,

vs.                          Case No. 11-2098-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits.  The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

2

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy.

<u>Barnhart v. Thomas</u>, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. <u>Nielson</u>, 992 F.2d at 1120; <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. <u>Thompson</u>, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On July 14, 2009, administrative law judge (ALJ) Raul C. Pardo issued his decision (R. at 59-67). Plaintiff alleges that he has been disabled since March 1, 1998 (R. at 59). Plaintiff is insured for disability insurance benefits through December 31, 2004 (R. at 61). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity from March 1, 1998, his alleged onset date, through December 31, 2004, his date last insured (R. at 61). At step two, the ALJ found that plaintiff

4

had the following severe impairments: alcohol abuse disorder,
status post left hip arthroplasty, status post left shoulder
fracture (R. at 61).  At step three, the ALJ determined that
plaintiff's impairments do not meet or equal a listed impairment
(R. at 64).  After determining plaintiff's RFC (R. at 64), the
ALJ determined at step four that plaintiff was unable to perform
past relevant work (R. at 65).  At step five, the ALJ determined
that other jobs exist in significant numbers in the national
economy that plaintiff could perform (R. at 65-66).  Therefore,
the ALJ concluded that plaintiff was not disabled (R. at 66-67).

**III.  Did the ALJ fail to properly assess all of plaintiff's
severe impairments or consider the combined effects of multiple
impairments on plaintiff's ability to function?**

At step two, the ALJ found that plaintiff had severe
impairments of alcohol abuse disorder, status post left hip
arthroplasty, and status post left shoulder fracture (R. at 61).
The issue before the ALJ was whether plaintiff was disabled from
March 1, 1998 (plaintiff's alleged onset date) through December
31, 2004 (the last date he qualified for disability insurance
payments).  The ALJ found that the medical evidence showed few
medical problems that would meet the severity and durational
requirement to be considered "severe" during this time frame (R.
at 62).  Plaintiff argues that the ALJ's findings at step two
ignore plaintiff's history of left knee surgery, right hip

5

nailing, polyneuropathy, severe arterial occlusive disease in both legs, a history of urinary retention and infection, thoracic defects indicative of chronic compression fracture, lumbar endplate compressions indicative of intervertebral disc herniations with multiple disc changes and facet arthropathy, and multiple degenerative changes in the cervical spine (Doc. 9 at 21-22).[1]  Plaintiff contends that the ALJ erred by not finding that these additional impairments were also severe impairments.

The burden of proof at step two is on the plaintiff.  See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis).  A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis."  Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity").  A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities.[2]  Williams,

---

[1]The court is using page numbers from CM/ECF found at the top of the page.

[2]Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3; Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004).

6

844 F.2d at 751.  However, the claimant must show more than the mere presence of a condition or ailment.  If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity.  Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled.  20 C.F.R. § 404.1512(c), § 416.912(c).

    Plaintiff has failed to point to any medical evidence which states or indicates that these impairments would have more than a minimal effect on plaintiff's ability to perform basic work activities during any time from 1997-2004.  Plaintiff's brief cites to diagnoses in the medical evidence in 2008, over 3 years after the expiration of disability insurance benefits, but even that evidence does not state or indicate that plaintiff has impairments which would have more than a minimal effect on plaintiff's ability to perform basic work activities.  One limitation was mentioned in a medical report from February 12,

2008 which indicated that plaintiff has "significant discomfort when he walks up stairs" (R. at 418).  However, the ALJ, in his RFC findings, limited plaintiff to no more than occasional climbing of stairs (R. at 64).

Furthermore, the ALJ relied on a report from a field agent (R. at 61-62) who conducted a face-to-face interview with the plaintiff on May 14, 2007 (R. at 183).  In his report, the field agent stated the following:

> I did not see any limitations to his walking,
> sitting or standing.  He sat without
> readjusting his seat or having to stretch.
> He did not have any limps or range of motion
> problems with his walking.  He stood without
> a problem after a long interview...

(R. at 184).  The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  For these reasons, the plaintiff failed to meet his burden of proof on this issue.

Even assuming plaintiff met his burden of proving that one or more of these impairments were severe impairments, the issue before the court would be whether it is reversible error if the ALJ fails to list all the severe impairments at step two.  In Brescia v. Astrue, 287 Fed. Appx. 626, 628-629 (10th Cir. July 8, 2008), the claimant argued that the ALJ improperly determined that several of her impairments did not qualify as severe

8

impairments.   The court held that once an ALJ has found that
plaintiff has at least one severe impairment, a failure to
designate another as "severe" at step two does not constitute
reversible error because, under the regulations, the agency at
later steps considers the combined effect of all of the
claimant's impairments without regard to whether any such
impairment, if considered separately, would be of sufficient
severity.   In Hill v. Astrue, 289 Fed. Appx. 289, 291-292 (10th
Cir. Aug. 12, 2008), the court held that once the ALJ finds that
the claimant has any severe impairment, he has satisfied the
analysis for purposes of step two.   The ALJ's failure to find
that additional alleged impairments are also severe is not in
itself cause for reversal.   However, the ALJ, in determining
plaintiff's RFC, must consider the effects of all of the
claimant's medically determinable impairments, both those he
deems "severe" and those "not severe."

In making his RFC findings, the ALJ stated that he
considered all symptoms and the extent to which these symptoms
can reasonably be accepted as consistent with the objective
medical evidence and other evidence.   The ALJ also indicated that
he considered the opinion evidence (R. at 64).   Furthermore, the
ALJ acknowledged that in making an RFC finding, he "must consider
all of the claimant's impairments, including impairments that are
not severe" (R. at 60).   In light of the fact that the ALJ found

other severe impairments at step two, considered all symptoms and evidence when making RFC findings for the plaintiff, considered all of plaintiff's impairments, including non-severe impairments when making his RFC findings, and the failure of plaintiff to cite to medical opinion evidence that plaintiff has limitations from these impairments that were not included in the ALJ's RFC findings, the court finds no reversible error by the ALJ in his consideration of plaintiff's physical impairments.

## IV.  Did the ALJ err in his consideration of plaintiff' substance use?

In his decision, the ALJ found that plaintiff's alcohol abuse was a severe impairment, meeting severity and durational criteria.  The ALJ then stated that this condition would preclude the payment of disability.  The ALJ also noted that plaintiff testified at the hearing that after this time, his heavy drinking stopped (R. at 62).  Plaintiff argues, without elaboration, that the ALJ did not apply the regulations regarding alcohol or drug use (Doc. 9 at 21).

In 1996, Congress passed Public Law 104-121.  It added the following language to 42 U.S.C. § 423(d)(2):

> (C) An individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.

10

20 C.F.R. § 404.1535 (disability insurance) and § 416.935 (SSI)
are identical, and are the implementing regulations governing
this issue.  The implementing regulations make clear that a
finding of disability is a condition precedent to an application
of §423(d)(2)(C).  The Commissioner must first make a
determination that the claimant is disabled.  He must then make a
determination whether the claimant would still be found disabled
if he or she stopped abusing alcohol or drugs.  The ALJ cannot
begin to apply §423(d)(2)(C) properly when he has not yet made a
finding of disability.  <u>Drapeau v. Massanari</u>, 255 F.3d 1211,
1214-1215 (10th Cir. 2001).  In other words, an ALJ must first
conduct the five-step inquiry without separating out the impact
of alcoholism or drug addiction.  If the ALJ finds that the
claimant is not disabled under the five-step inquiry, then the
claimant is not entitled to benefits and there is no need to
proceed with the analysis under §§ 404.1535 or 416.935.
<u>Bustamante v. Massanari</u>, 262 F.3d 949, 955 (9th Cir. 2001).

     Given the fact that the ALJ did not find plaintiff to be
disabled, even after a finding that his severe impairments
included alcohol abuse disorder, the ALJ did not err in his
application of the applicable statute and regulations.  Although
the ALJ erroneously stated that plaintiff's alcohol abuse would
preclude the payment of disability, this statement is harmless in
light of the fact that the ALJ properly applied the statute and

regulations regarding substance abuse.

**V.  Did the ALJ err in his credibility findings?**

Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff.  Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler.  White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  Furthermore, the ALJ need not discuss every relevant factor in evaluating pain testimony.  Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002).  An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why.  McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002).  It is error for the ALJ to use standard boilerplate language which

12

fails to set forth the specific evidence the ALJ considered in
determining that a claimant's complaints were not credible.
Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).  On the
other hand, an ALJ's credibility determination which does not
rest on mere boilerplate language, but which is linked to
specific findings of fact fairly derived from the record, will be
affirmed by the court.  White, 287 F.3d at 909-910.

      Plaintiff argues that the ALJ relied solely on medical
evidence to conclude that plaintiff was not fully credible (Doc.
9 at 25).  However, as noted above, the ALJ also relied on the
observations of a field agent and his statement that he did not
see any limitations in plaintiff's ability to walk, sit or stand
(Doc. 61-62).

      Furthermore, plaintiff testified that he went back to school
after he quit working in 1998 (R. at 21-23).  Plaintiff also
testified that after he graduated in 2003, and obtained
certification as a CNA (certified nurse's aide) and a CMA
(certified medication aide), he went to work for a month during
2003, but had to quit working when his employer went out of
business (R. at 23, 26).  Plaintiff was then asked:

            **Q (by ALJ): Had they not gone bankrupt, would
            you have been able to sustain work full time?**

            **A (by plaintiff): Yes.**

(R. at 26, emphasis added).  The ALJ cited to this testimony in

13

his decision (R. at 64).  This evidence is certainly relevant in light of plaintiff's claims that he was disabled from March 1, 1998 through his date last insured of December 31, 2004.

Plaintiff also testified that was in class or studying for 12 hours a day, five days a week, to obtain his CNA and CMA, and was in the top of his class (R. at 24-26).  The ALJ noted in his decision that plaintiff in 2002-2003 was attending school full-time and was in the top of his class (R. at 64).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).  The court can only review the sufficiency of the evidence.  Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo.  Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

As noted above, the ALJ does not need to engage in a formalistic factor-by-factor recitation of the evidence so long as the ALJ sets forth the specific evidence he relied on in evaluating plaintiff's credibility.  <u>Poppa v. Astrue</u>, 569 F.3d 1167, 1171 (10th Cir. 2009).  In the case before the court, the ALJ set forth the specific evidence he relied on in evaluating plaintiff's credibility.  Based on the evidence cited by the ALJ, including the medical evidence, 3rd party observations, and plaintiff's own testimony, the court finds that the ALJ's credibility findings are reasonable and consistent with the evidence.

**VI.  Did the ALJ err in his step five findings?**

At step five, the vocational expert (VE) opined, and the ALJ found that plaintiff could perform the following sedentary jobs:

> 1. information clerk, DOT 237.367-022
>
> 2. appointment clerk, medical DOT 237.367-010
>
> 3. hospital admitting clerk, DOT 205.362-018

(R. at 44-46).  However, in his decision, the ALJ listed the DOT (Dictionary of Occupational Titles) code for the 2nd job of appointment clerk as 237.367-018.  This code is for a different type of information clerk than the one noted above, and is identified as a light job, not a sedentary job.[3]  However, it is

---

[3]<u>Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles</u> (SCO) (U.S. Dept. of Labor, 1993, at 452).

clear from the ALJ decision that he is adopting the testimony of the VE, and indicated that the 2nd job identified was that of a appointment clerk, not an information clerk.  Furthermore, the ALJ's findings regarding the number of appointment clerk jobs in the state and nation parallel the testimony of the VE (R. at 45, 66).  On these facts, the court finds that the ALJ decision simply reflects a harmless typographical error.

Finally, plaintiff argues that the ALJ erred by finding that plaintiff had acquired work skills from past relevant work as a medical aide (R. at 65).  In his testimony, the VE relied on plaintiff's training and jobs in the medical field when he indicated what other jobs plaintiff could perform (R. at 42, 45).  Plaintiff states that the position of a medical aide or technician carries a specific vocational preparation (SVP) level of 4, requiring 3-6 months to learn.  Plaintiff argues that he only worked in this position for 1 month, which was insufficient time to acquire the necessary skills (Doc. 9 at 27).  However, there is evidence in the record, provided by plaintiff, that he worked as a medical aide from May to July 2003 on a full-time basis (R. at 187).  Furthermore, the VE addressed this very issue at the hearing, testifying that SVP is based on education, training, or experience.[4]  The VE noted that plaintiff's

_____

[4]According to the <u>Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles</u> (SCO), SVP may be acquired through education/school, training, or experience in a job (Appendix B at B-1).

education, certification, training and experience for that position had been for a year (R. at 48).  Plaintiff does not cite to any evidence disputing the testimony of the VE on this issue. On these facts, the court finds that the evidence in the case supports the ALJ's finding that plaintiff had acquired work skills from his past relevant work as a medical aide.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 9th day of May, 2012, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge